**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No.

JEANELL DURAN

a/k/a JEANELL PAGAN

a/k/a JEANELL PAGAN MASCARENAS

Plaintiff,

v.

SANTIAGO'S MEXICAN RESTAURANT

Defendant.

---

## COMPLAINT AND JURY DEMAND

---

Plaintiff Jeanell Duran by and through counsel Christopher M.A. Lujan of EMPOWER P.C., respectfully alleges for her Complaint and Jury Demand as follows:

## I. INTRODUCTION

1. This case involves Defendant Santiago's Mexican Restaurant's willful discrimination and interference with the Plaintiff's attempts to take Family Medical Leave in August 2020 to care for her mother who was perilously ill from the ravages of the COVID-19 virus. For six years, Plaintiff dutifully served as a general manager for the Defendant where she routinely performed her job responsibilities without incident. In July 2020, Plaintiff's mother became gravely ill with the COVID-19 virus which required

a lengthy hospital visit which lasted from August through December 2020. Shortly after the Plaintiff applied for leave under the Family Medical Leave Act, she was terminated by the Defendant. Finally, the Defendant has failed to pay Plaintiff for $3,000.00 in wages which she earned in February 2020 and June 2020 which is in violation of the Colorado Wage Claim Act. As a result of Defendant's illegal treatment, Ms. Duran lost her job which caused her to suffer lost wages, interest, loss of future employment opportunities, and other significant injuries, damages, and losses.

## II. JURISDICTION AND VENUE

2. Jurisdiction of this Court is proper pursuant to 28 U.S.C. §§ 1331 and 1343. This action is authorized and instituted pursuant to the Family Medical Leave Act, 29 USC §2601 *et. seq*.

3. Plaintiff's claim for attorney's fees and costs is proper under the enforcement provisions of the Family Medical Leave Act, 29 U.S.C. §2617 (a)(3).

4. The employment practices alleged herein to be unlawful were committed within the jurisdiction of the United States District Court for the District of Colorado. Venue is proper in this Court pursuant to 28 U.S.C. §1391 (b).

5. Supplemental jurisdiction over the Plaintiff's state law claim is appropriate pursuant to 28 U.S.C. § 1367.

## III. PARTIES

6. Plaintiff Jeanell Duran is a citizen of the United States and a resident of the State of Colorado. At all times referred to herein, Ms. Duran was employed by Santiago's Mexican Restaurant.

7. Defendant, Santiago's Mexican Restaurant, was established in 1990 and currently owns and operates twenty-seven (27) restaurants in the Denver metro area.

8. Santiago's Mexican Restaurant is registered in good standing to do business in Colorado and is located in the City of Brighton, Adams County, State of Colorado.

9. At all relevant times, Defendant was an employer within the meaning of the Family Medical Leave Act as defined in 29 U.S.C. §2611 (4), is engaged in an industry affecting commerce, and employed more than fifty (50) employees for each working day during each of twenty (20) or more calendar workweeks in the current or preceding calendar year.

## IV. FACTUAL ALLEGATIONS

10. Plaintiff began her employment with the Defendant in 2014 where she was hired to serve as a general manager. Plaintiff began working for the Defendant at its' downtown store located at 2705 Huron Steet Denver, Colorado 80202.

11. As a general manager, Plaintiff was responsible for managing store employees, organizing daily restaurant operations, and managing store inventory. During Plaintiff's service as a general manager, she typically supervised over 15 employees.

12. The Defendant was founded and is owned by Martina Carmen Morales. From 2011 until her divorce in 2020, the Plaintiff was married to Ms. Morales' nephew. Throughout her marriage to her ex-husband, Plaintiff frequently referred to Ms. Morales as "Auntie Carmen."

13. Prior to working for the Defendant, Plaintiff was employed as an office manager at a dentist's office. Ms. Morales knew this and successfully recruited Plaintiff to come and work for Defendant in 2014.

14. In 2018, the Defendant moved Plaintiff to serve as a general manager in its' new restaurant in Northglenn, Colorado. This restaurant is officially known as Brighton Santiago's LLC 120th.

15. In 2020 through her termination, Plaintiff earned a monthly salary of $4,400.00 and a monthly commission payment of $1,508.00.

16. At the time of her termination, the Plaintiff was employed with the Defendant for more than 12 months.

17. Prior to her termination, the Plaintiff worked more than 1,250 hours during the 12-month period prior to her termination.

18. At the time of her termination, the Defendant employs 50 or more employees within 75 miles of the Northglenn restaurant where the Plaintiff served as general manager.

19. Plaintiff successfully performed her job requirements as a General Manager and routinely earned a commission payment. Aside from a reprimand for a minor rule violation in 2019, Plaintiff successfully performed the terms and conditions required of her as a general manager.

20. The Defendant never made Plaintiff aware of her reprimand in 2019 and Ms. Duran first became aware of this reprimand after she was terminated by Defendant and after she reviewed her personnel file in summer 2021.

21. From her initial hire in 2014 through 2020, Ms. Morales and Plaintiff had a good relationship and Ms. Morales never had any problems with how Plaintiff was running the Northglenn store.

22. Starting in June 2020, Plaintiff's mother became ill with COVID-19 and she was hospitalized at Lutheran hospital for her illness from 09 June 2020 through 13 August 2020.

23. Specifically, Plaintiff's mother suffered from severe respiratory distress and illnesses after she contracted the COVID-19 virus. Due to her incapacitation from this illness, Plaintiff was required to make medical decisions for her mother which were necessary to save her life.

24. Plaintiff was the only family member capable of taking care of her ill mother.

25. During her mother's medical stay, Plaintiff obtained three letters from medical providers to verify with the Defendant the need for Ms. Duran to care for her mother.

26. When Ms. Duran' mother was first admitted to the hospital, Plaintiff repeatedly tried to contact Ms. Morales through text messages to discuss the impact of this illness on her employment. Plaintiff was unsuccessful in her attempts to talk with Ms. Morales.

27. After her unsuccessful attempts to reach Ms. Morales, Plaintiff contacted a fellow general manager in another Santiago's restaurant who informed Plaintiff that she should ask for leave to take care of her mother under the Family Medical Leave Act.

28. At all times salient in this matter, the Plaintiff was employed with the Defendant for at least twelve (12) months and worked at least 1,250 hours during the previous twelve (12) month period.

29. On 27 August 2020, Plaintiff sent Ms. Morales a letter asking for time off pursuant to the Family Medical Leave Act to care for her mother.

30. Ms. Morales never directly responded to Plaintiff's request to take leave under the Family Medical Leave Act. Instead, Ms. Morales, in a text message, told Plaintiff to file for unemployment. While Ms. Morales did not at this time tell Plaintiff that she was terminated or separated from her employment, Plaintiff interpreted this message to mean that she may have lost her job as general manager of the Northglenn restaurant.

31. In August 2020, the Defendant never provided Plaintiff with any documentation indicating to her that she was terminated or separated from employment.

32. There is no break room for employees at the Defendant's Northglenn restaurant.

33. While the Defendant displays labor posters at the "dry storage" area in its' Northglenn, the Defendant at all salient times in this lawsuit never displayed labor posters advising employees of their rights under the Family Medical Leave Act.

34. After Plaintiff's mother was discharged from the hospital on 13 August 2020, Ms. Duran stayed home with her to care for her until she was able to independently care for herself.

35. From August through 08 December 2020, Plaintiff attempted to communicate with Ms. Morales as to the status of her job. Due to their familial relationship, Plaintiff felt that she would routinely try and communicate with her "Auntie Carmen" in an effort to keep her job because she was never expressly advised that she was terminated or separated from her employment.

36. Ms. Morales refused to respond to Plaintiff's repeated attempts to communicate with her about her job with the Defendant.

37. On 09 December 2020, Plaintiff sent Ms. Morales an email where she wrote, "Hello Auntie, I am reaching out to you by email because I have texted you and you have not responded to my messages. Not sure if it's because you blocked me or you have chosen to let me go and don't want to tell me. But if that is the case, I do need a letter of termination and a reason why you have chosen to terminate me. Thank you, Jeanell Pagan."

38. No less than twelve minutes later, Ms. Morales sent an email to her HR department where she writes, "DO ALETTER (SIC) OF TERMINATION, IE.. THE RESTAURANT NEED (SIC) SOMEONE FULL TIME, AS SHE HAD TO BE OFF SEVERAL MONTHS."

39. Ms. Morales refused to directly respond to Plaintiff's email.

40. A little over one month later, the Plaintiff received a letter from Ms. Morales notifying her of her termination. In her termination letter, Ms. Morales indicated that Plaintiff was terminated for "not being able to work as assigned and scheduled, not clocking in and out as required by each employee and manager."

41. At no time prior to Plaintiff's termination did the Defendant ever warn Ms. Duran about her attendance or about issues involving clocking in and out.

42. Defendant has a pattern and practice of allowing other restaurant managers to leave the country for prolonged absences while still allowing them to keep their jobs.

43. The Plaintiff needed an extended time off to care for her mother who was ailing from COVID-19 but was treated differently than other managers who left the country yet were allowed to maintain their employment.

44. Plaintiff's relationship with her Auntie Carmen negatively changed after she asked for family medical leave to care for her mother.

45. After her termination, Plaintiff ordered her personnel file from Defendant which included the amount of money Ms. Duran was paid in 2020 for wages and commissions.

46. Information from Defendant's payment records shows that it did not pay Plaintiff her commission payments for February 2020 ($1,508.66) and June 2020 ($1,508.66). The Defendant owes that Plaintiff over $3,016.00 in commission payments.

47. As a result of her termination, Plaintiff was forced to find new employment at a job with considerably less income and hours than she was working as a general manager for the Defendant.

## V. STATEMENT OF CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### (Interference with Plaintiff's Right to Leave Under the Family Medical Leave Act 29 U.S.C. §2601 *et. seq.*)

48. Plaintiff hereby incorporates all paragraphs of this Complaint as though fully set forth herein.

49. Defendant is a covered employer as defined by the Family Medical Leave Act ("FMLA"), 29 U.S.C. §2601, *et. seq.*

50. The Plaintiff is an eligible employee as defined by the FMLA, 29 CFR 825.100 (a).

51. At the time of her termination, the Plaintiff was employed with the Defendant for more than 12 months.

52. Prior to her termination, the Plaintiff worked more than 1,250 hours during the 12-month period prior to her termination.

53. At the time of her termination, the Defendant employs 50 or more employees within 75 miles of the Northglenn restaurant where the Plaintiff served as general manager.

54. The FMLA makes it unlawful for the Defendant "to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right" under the Act, 29 U.S.C. §2615 (a)(1).

55. The FMLA grants an eligible employee a total of 12 workweeks of leave during any 12-month period to care for a parent, 29 C.F.R. §825.122 (c).

56. Plaintiff's mother's illnesses because of COVID-19 qualifies as a serious medical condition under the FMLA.

57. On 27 August 2020, Plaintiff sent a letter to Ms. Morales seeking family medical leave to care for her mother.

58. Plaintiff made this request after she was counseled by a fellow general manager to make a request in writing for family medical leave to care for her mother.

59. As a covered employer, the Defendant is required to conspicuously post a poster detailing FMLA rights and complaint procedures on the premises—specifically its' Brighton restaurant.

60. At all salient times in this matter, the Defendant did not post a sign at the Brighton restaurant notifying its employees of their rights under the FMLA.

61. Within five days after learning of the need to take Family Medical Leave, the Defendant failed to notify Plaintiff of her eligibility for FMLA leave as required under federal law, 29 C.F.R. §825.300(b).

62. Neither Ms. Morales, nor any member of the Defendant's Human Resources department, ever responded to Plaintiff's request for family medical leave.

63. Had Defendant authorized Plaintiff's request for family medical leave under the FMLA, the twelve (12) weeks of leave taken by Ms. Duran to care for her mother would have been protected by federal law.

64. The Defendant's failure to provide Plaintiff's with required notices under FMLA constitutes as an interference with her rights under federal law.

65. The Defendant's deliberate refusal to respond to the Plaintiff's request for family medical leave to care for her mother's serious medical condition constitutes a willful violation of the FMLA because it knew or showed reckless disregard as to whether its' conduct violated the FMLA.

66. The Defendant's actions are the direct and proximate reasons why the Plaintiff did not receive her right to protected leave under the FMLA.

67. Defendant's interfered with the Plaintiff's federally protected rights within the meaning of FMLA.

68. The Defendant's interference with the Plaintiff's FMLA rights has caused the Plaintiff to suffer significant economic, consequential, compensatory damages, injuries, and losses in amounts that will be proven at trial.

**SECOND CLAIM FOR RELIEF**
**(Discrimination Against Plaintiff's Right to Leave Under the Family Medical Leave Act 29 U.S.C. §2601 *et. seq.*)**

69. Plaintiff hereby incorporates all paragraphs of this Complaint as though fully set forth herein.

70. Defendant is a covered employer as defined by the Family Medical Leave Act ("FMLA"), 29 U.S.C. §2601, *et. seq*.

71. The Plaintiff is an eligible employee as defined by the FMLA, 29 CFR 825.110 (a).

72. At the time of her termination, the Plaintiff was employed with the Defendant for more than 12 months.

73. Prior to her termination, the Plaintiff worked more than 1,250 hours during the 12-month period prior to her termination.

74. At the time of her termination, the Defendant employs 50 or more employees within 75 miles of the Northglenn restaurant where the Plaintiff served as general manager.

75. The FMLA prohibits employers from discharging or discriminating against an employee who opposes any practice made unlawful by the FMLA in accordance with 29 U.S.C. §2615 (a)(2).

76. The FMLA grants an eligible employee a total of 12 workweeks of leave during any 12-month period to care for a parent in accordance with 29 C.F.R. §825.100 (a).

77. Plaintiff's mother's illnesses because of COVID-19 qualifies as a serious medical condition under the FMLA.

78. On 27 August 2020, Plaintiff sent a letter to Ms. Morales seeking family medical leave to care for her mother.

79. Prior to asking for family medical leave, Plaintiff repeatedly communicated with Ms. Morales to apprise her of her mother's medical condition and when she was expected to return to work.

80. Shortly after Plaintiff asked for Family Medical Leave to care for her mother, the Defendant—through the actions of Ms. Morales—terminated Ms. Duran.

81. Had Defendant authorized Plaintiff's request for family medical leave under the FMLA, the twelve (12) weeks of leave taken by Ms. Duran to care for her mother would have been protected by federal law.

82. Had Plaintiff not requested family medical leave to care for her mother, the Defendant would not have terminated her in January 2021.

83. The Defendant terminated Plaintiff shortly after Ms. Duran asked for leave under the Family Medical Leave Act.

84. At no time prior to her termination did Defendant ever discipline or counsel Plaintiff for her inability to work her scheduled shifts.

85. At no time prior to her termination did Defendant ever discipline or counsel Plaintiff for failing to clock in and out during her scheduled shifts.

86. The Defendant's termination of Plaintiff's employment immediately after she asked for family medical leave to care for her mother's serious medical condition constitutes a willful violation of the FMLA because they knew or showed reckless disregard as to whether its' conduct violated the FMLA.

87. The Defendant's actions are the direct and proximate reasons why they discharged or discriminated against Plaintiff when she attempted to exercise her rights in taking protected leave under the FMLA.

88. The Defendant's interference with the Plaintiff's FMLA rights has caused the Plaintiff to suffer significant economic, consequential, compensatory damages, injuries, and losses in amounts that will be proven at trial.

**THIRD CLAIM FOR RELIEF**
**VIOLATION OF THE COLORADO WAGE ACT C.R.S. §8-4-101, *et. seq.***

89. Plaintiff incorporates by reference, as though fully set forth herein.

90. Plaintiff was hired by the Defendant to work as a general manager who was, as part of her compensation package, eligible to earn commission payments of $1,508.66 a month.

91. As a company that employs employees within the State of Colorado, Defendant qualifies as an employer under C.R.S. §8-4-101 (6) of the Colorado Wage Act.

92. The work performed by Plaintiff in 2020 for the benefit of the Defendant is considered wages or compensation under C.R.S. §8-4-101(14) of the Colorado Wage Act.

93. When the Defendant terminated the Plaintiff for the final time in January 2021, the amount of her unpaid wages in the amount of $3,017.32 was due and payable immediately under C.R.S. §8-4-109 (1)(a) of the Colorado Wage Act.

94. The Defendant was required under the Colorado Wage Act to pay the Plaintiff for her wages and compensation that she earned at the separation from her employment. To date, the Defendant has still not paid Plaintiff for the commission payments she earned prior to her termination.

95. The Defendant is not authorized to make deductions or setoffs from Plaintiff's wages under C.R.S. §8-4-105 (1) of the Colorado Wage Act.

96. Plaintiff properly brings this cause of action within the two-year statute of limitations in accordance with C.R.S. §8-4-122.

97. A willful violation of the Colorado Wage Act provides for a three-year statute of limitation for the Plaintiff to bring her claim against the Defendant. Because the

Defendant has still not paid Plaintiff for these commission payments, this is evidence that the Defendant violated C.R.S. §8-4-122 of the Colorado Wage Act.

98. Because the Defendants willfully violated the Colorado Wage Act, the penalty can be increased by 50 percent under C.R.S. §8-4-109 (3)(c) of the Colorado Wage Act.

99. The Plaintiff has incurred financial damages, substantial aggravation, and attorney's fees because of the Defendant's willful refusal to pay her wages and penalties as required under the Colorado Wage Act.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor against Defendant, and award her all relief as allowed by law, included, but not limited to the following:

a. Declaratory relief and injunctive relief, as appropriate;

b. Actual economic damages as established at trial;

c. Any economic losses or injuries that Plaintiff has suffered to the present time or which Plaintiff will probably suffer in the future, including but not limited to loss of earnings or damage to her ability to earn money in the future, and other expenses;

d. Compensatory damages, including, but not limited to those for future pecuniary and non-pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses;

e. Punitive damages for all claims as allowed by law in an amount to be determined at trial;

f. Liquidated damages for all claims as allowed by law in an amount to be determined at trial;

g. Pre-judgment and post-judgment interest at the highest lawful rate;

h. Attorney's fees and costs; and

i. Such relief as justice requires.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

Dated this 22nd day of December 2021

*s/ Christopher M.A. Lujan*
Christopher M.A. Lujan, Esq.
Empower P.C
2851 South Parker Road, Suite 316
Aurora, Colorado 80014
720.791.5700 (Office)
720.260.1802 (Mobile)
303.317.8145 (Facsimile)
christopher@empowerlawdenver.com

Attorney for Plaintiff

cc: Ms. Jeanell Duran
***Via Electronic Mail***